UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                              Criminal Case No. 17-20059
v.                              Honorable Linda V. Parker

CALVIN LAVELLE BOYD,

        Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

Defendant Calvin Lavelle Boyd currently is charged in this case with felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Presently before the Court is his Motion to Suppress, filed March 10, 2017. Defendant seeks to suppress ammunition and three weapons seized from the automobile he was driving when stopped by police on January 18, 2017, in Swartz Creek, Michigan. The Government filed a brief in opposition to the motion on March 31, 2017.

## I.    Factual Background

At approximately 1:00 a.m. on January 18, 2017, Defendant was driving a GMC Yukon in Swartz Creek, Michigan. The Yukon, which Defendant claims belongs to a friend, has dark tinted windows on the driver's window. As it

generally is illegal to operate a motor vehicle in Michigan with such a tinted window, Swartz Creek Police Officer Nicholas Paul began following the Yukon in his patrol car. As Officer Paul pulled behind the Yukon, the driver slowed down, at which time Officer Paul observed that the brake light on the driver's side was burned out. Officer Paul then conducted a traffic stop of the Yukon. Before exiting his patrol car, Officer Paul ran the Yukon's license plate and determined the vehicle was registered to Tomesha Canady.

Officer Paul then approached the driver's window of the vehicle, at which time Defendant offered his driver's license and proof of insurance. Officer Paul told Defendant he stopped the Yukon because of the dark window tint and the burned out brake light. Officer Paul returned to his patrol car to run Defendant's license through the Law Enforcement Information Network ("LEIN").

Around this time, another Swartz Creek Police Officer, Greg RaCosta, arrived at the scene. When Defendant began waving paperwork outside the driver's window, Officer RaCosta approached Defendant and began talking with him. The paperwork Defendant offered was a doctor's note, stating that he had a sun allergy and needed tinted windows to operate a vehicle safely.

During their conversation, Defendant told Officer RaCosta that he did not have a job and never had one. Officer RaCosta claimed that as they spoke, Defendant repeatedly turned around to look in the back seat of the Yukon and

reached his hand toward the back. Officer RaCosta also claimed to smell marijuana coming from within the Yukon.

In the meantime, Officer Paul finished running Defendant's license in LIEN, and returned to the Yukon. Officer Paul also noticed that Defendant kept turning away from the officers and reaching into the back seat of the vehicle. Officer Paul also observed that Defendant appeared nervous. For these reasons, the officers asked Defendant to exit the vehicle for their safety.

After Defendant exited the Yukon, Officer RaCosta patted him down for weapons and found a large wad of cash in Defendant's pants pocket. Defendant indicated that he did not know how much money he had, but a later count revealed that it was $4,557.00. The officers then asked Defendant for consent to search the vehicle, which he refused.

At that point, Officer Paul retrieved his K-9 partner, Roscoe, from the back of his patrol car. Defendant was placed in the back seat of one of the patrol cars while Officer Paul walked Roscoe around the Yukon to smell for drugs. Roscoe alerted, indicating that he detected drugs, and jumped into the open driver's door of the Yukon, alerting specifically to the back of the driver's seat. There, in the seat pouch, Officer Paul found a digital scale with suspected marijuana residue.

While inside the Yukon, Roscoe stepped on a large black jacket on the backseat floor, which shifted the jacket and exposed a pistol behind the front

passenger's seat. When Roscoe exited the vehicle, he further displaced the jacket, exposing a second, loaded handgun behind the driver's seat. Defendant yelled out that the guns were registered. Officer RaCosta asked Defendant if he had a concealed permit license, to which Defendant answered "no." Officer RaCosta then handcuffed Defendant and placed him under arrest and in the back seat of his patrol car.

Officer Paul continued to search the Yukon, uncovering an additional firearm and ammunition. He also found a second digital scale, four cellular telephones, and a suspected marijuana roach.

## II. Parties' Arguments

Defendant seeks suppression of the ammunition and firearms recovered from the Yukon, contending that the stop of the vehicle was illegal because the driver's window, while tinted, was lawful based on the medical authorization Defendant showed the officers. Defendant also denies that the vehicle smelled of marijuana. Defendant seeks an evidentiary hearing to illicit testimony relevant to these issues.

The Government contends that Officer Paul had probable cause to stop the Yukon because the driver's window was tinted and the vehicle had a defective brake light. While Defendant's medical authorization may have subsequently justified the tinting, this did not render the initial stop illegal. The Government argues that the officers also had probable cause to conduct a dog sniff of the

Yukon, whether or not Officer RaCosta smelled marijuana, because the totality of circumstances gave the officers reasonable suspicion to suspect criminal activity. Among other things, the Government points to the following: (a) the time of the stop (i.e., one o'clock in the morning); (b) Defendant's conduct in repeatedly turning around to look in the back seat and reaching into the back seat during the stop; (c) Defendant's report that he did not have a job and never had one, but was carrying a substantial wad of cash in his pocket; and (d) Defendant's apparent nervousness. Roscoe's alert on the vehicle then gave the officers probable cause to search inside.

The Government argues that Defendant is not entitled to an evidentiary hearing because the contested facts do not undermine the existence of probable cause.

### III.   Applicable Law & Analysis

The first issue the Court must address is whether Defendant is entitled to an evidentiary hearing with respect to his suppression motion. The Sixth Circuit has held that " 'a defendant must make at least some initial showing of contested facts to be entitled to such a hearing.' " *United States v. Lawson*, 476 F. App'x 644, 648 (6th Cir. 2012) (brackets omitted) (quoting *United States v. Giacalone*, 853 F.2d 470, 483 (6th Cir. 1988)). The existence of any contested fact does not warrant an evidentiary hearing, however. "Evidentiary hearings on motions to suppress

5

should be granted 'when the defendant alleges sufficient facts *which if proven would justify relief.*' " *United States v. McGhee*, 161 F. App'x 441, 444 (6th Cir. 2005) (quoting *United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998)) (additional citation omitted). Thus, the contested fact(s) must be material to the question of probable cause. As set forth below, none of the facts contested by Defendant impacts the question of whether there was probable cause to stop and search the Yukon.

The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and an ordinary traffic stop is a "seizure" within the meaning of the Fourth Amendment. *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012); *see also Delaware v. Prouse*, 440 U.S. 648, 653 (1979). "[A] police officer lawfully may stop a car when he has probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime." *Jackson*, 682 F.3d at 453 (citing *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008)) (additional citations omitted). Whether a particular traffic stop is constitutional is analyzed under "the standard for temporary detentions set forth in *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny." *United States v. Everett*, 601 F.3d 484, 488 (6th Cir. 2010). Under this framework, the stop must be "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Winters*, 782 F.3d 289, 296 (6th

6

Cir. 2016) (citing *Terry*, 392 U.S. at 20). "If an officer develops reasonable and articulable suspicion of criminal activity during a stop, 'he may extend the traffic stop long enough to confirm or dispel his suspicions. Any such extension, though, must be limited in scope and duration.' " *Id*. (quoting *United States v. Johnson*, 482 F. App'x 137, 143 (6th Cir. 2011) (additional quotation marks and citation omitted)).

When he stopped the Yukon Defendant was driving on January 18, 2017, Officer Paul had probable cause of two traffic violations: illegal tinted windows in violation of Michigan Compiled Laws Section 257.709 and a defective brake light in violation of Michigan Compiled Laws § 257.697. Prior to the stop, the officer would not have known that Defendant possessed medical authorization for the tinted window. In any event, in his motion, Defendant does not challenge the second violation justifying the stop. As such, the Court holds that there was probable cause to stop Defendant's vehicle.

"A seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). After the initial purpose for the traffic stop is complete, the occupants of the vehicle "cannot be further detained unless something that occurred during the stop caused the officers to have a reasonable and articulable suspicion that criminal activity was afoot."

*United States v. Hill*, 195 F.3d 258 (6th Cir. 1999) (citing cases). "Whether an officer has reasonable, articulable suspicion of criminal activity 'is based on the totality of the circumstances presented to the officer.' " *Winters*, 782 F.3d at 298 (quoting *United States v. Jones*, 673 F.3d 497, 502 (6th Cir. 2012)). "This is an objective standard premised on 'specific facts' that 'would lead a reasonable officer to suspect illicit activity.' " *Id.* (quoting *United States v. Johnson*, 482 F. App'x 137, 143 (6th Cir. 2012). Here, what undisputedly happened after the traffic stop gave the officers reasonable and articulable suspicion to continue their investigation and, ultimately, probable cause to search the Yukon.

After stopping the Yukon, the officers had a lawful reason for asking Defendant to exit the vehicle. Specifically, the stop occurred at one o'clock in the morning, Defendant appeared nervous to the officers, and they observed him repeatedly reaching and looking into the back seat.[1] Defendant does not contest these facts, which gave the officers reasonable suspicion that he was armed or trying to hide evidence of criminal activity. " 'A concern for officer safety permits a variety of police responses in differing circumstances, including ordering a … passenger out of a car during a traffic stop, … and conducting pat-down searches

---

[1] The Court recognizes that the Sixth Circuit has found nervousness an unreliable indicator in finding reasonable suspicion of criminal activity, especially in the context of a traffic stop. *See United States v. Richardson*, 385 F.3d 625, 630 (6th Cir. 2004); *United States v. Bell*, 555 F.3d 535, 540 (6th Cir. 2009). Nevertheless, Defendant's apparent nervousness in conjunction with his furtive actions provided the officers reason to suspect illicit activity.

upon reasonable suspicion that they may be armed and dangerous.' " *United States v. Campbell*, 549 F.3d 364, 372 (6th Cir. 2008) (emphasis removed) (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 822 (6th Cir. 2005)); *see also Pennsylvania v. Mimms*, 434 U.S. 106 (1977).

The pat-down of Defendant revealed a large wad of cash, which further heightened the officers' suspicion that Defendant was engaged in criminal activity, particularly as he reported to them that he was unemployed and had never held a job. Defendant fails to present facts suggesting that the subsequent dog sniff unreasonably extended his detention. *See Caballes*, 543 U.S. at 409 (establishing that "the use of a well-trained narcotics-detection dog … during a lawful traffic stop, generally does not implicate legitimate privacy interests"); *Winters*, 782 F.3d at 297 (holding that the defendant could only establish a Fourth Amendment violation "by showing that the officer no longer had reason to keep him where he was in order to conduct the dog sniff") (internal quotation marks and citation omitted); *see also Rodriguez v. United States*, 135 S. Ct. 1609, 1612 (2015) (holding that the police cannot *prolong* an otherwise-completed traffic stop, *absent reasonable suspicion*, in order to have a dog sniff the vehicle for illegal drugs). Once the dog sniff alerted to the presence of drugs inside the Yukon, there was probable cause to search the vehicle. *See Hill*, 195 F.3d at 273 ("It is well-established in this Circuit that an alert by a properly-trained and reliable dog

9

establishes probable cause sufficient to justify a warrantless search of a stopped vehicle.")

In summary, the Court concludes that Defendant is not entitled to an evidentiary hearing because the undisputed facts established that the officers had probable cause to stop and search the Yukon he was driving on January 18, 2017.

Accordingly,

**IT IS ORDERED** that Defendant's motion to suppress (ECF No. 15) is **DENIED**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: May 5, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, May 5, 2017, by electronic and/or U.S. First Class mail.

s/ Richard Loury  
Case Manager